IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| STRAITS FINANCIAL, LLC, an Illinois Limited Liability Company, ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) | 1:12-cv-06110 Hon. James B. Zagel |
| TEN SLEEP CATTLE CO. AND RICHARD CARTER, ) ) ) | |
| Defendants. ) | |

## STRAITS FINANCIAL LLC'S TRIAL BRIEF

Plaintiff-Counterdefendant Straits Financial LLC ("Straits"), by its attorney, submits this Trial Brief in the captioned matter.

## SUMMARY OF FACTS

Schedule 2(a) of the parties proposed Pretrial Order in the matter, adopted herein, sets forth the basic undisputed facts of this matter.

The key contested factual issue in this case is whether Ten Sleep, through its president Richard Carter ("Carter"), on or about March 16, 2012 instructed Perkins to cease trading in account 747 79635 (the "35 account"). Perkins denies this. It is undisputed Straits was not made aware of their agreement or of this alleged instruction until after the Ten Sleep accounts were liquidated at a joint loss and reduced to cash. While Straits cannot independently determine whether or not this instruction was given, Straits believes that there is strong evidence that supports Perkins' contention that Carter/Ten Sleep did not give this instruction and that Ten Sleep knew of the trading activity and losses in the account after March 16, 2012 given its admitted receipt of account statements, ongoing transfer of money to and from Straits and otherwise.

1

Moreover, Straits contends that, whether or not the instruction to cease trading was given, Carter and Ten Sleep (a) had a contractual obligation and duty under their Customer Agreement to timely monitor the trading activity in the 35 account and to immediately report to Straits any error, discrepancy or unauthorized trading in the accounts; (b) that subsequent to March 16, 2012, Ten Sleep and Carter actually received some 20 account statements for the 35 account that clearly, fully and openly identified the trades that Ten Sleep and Carter now claim to be unauthorized; (c) that Ten Sleep and Carter were capable of identifying those trades as unauthorized, if they were in fact unauthorized; (d) that despite those and numerous other opportunities to notify Straits of the alleged unauthorized trades, at no time thereafter did Ten Sleep or Carter notify Straits or anyone else thereof; (e) that neither Perkins nor Straits did anything to prevent Ten Sleep and Carter from reviewing the account statements; (f) that had Ten Sleep and Carter notified Straits (or any one else) of the alleged unauthorized trading, Straits immediately would have halted all trading in the account; (g) that for nearly one month after the alleged March 16 conversation, the account was profitable and Ten Sleep would not have incurred any loss at all in the 35 account had it timely notified Straits; and (h) for about another month thereafter, the loss in the 35 account would have been far less than it turned out to be had Ten Sleep and Carter so notified Straits.

Straits believes the main contested issues of fact in this case include:

1. Whether Perkins acted within the scope of his employment and agency with Straits in entering into an oral agreement with Ten Sleep to trade the 35 Account with discretion, in trading that account, and in splitting profits in that account with Ten Sleep?

2. What were the terms of the oral agreement between Ten Sleep and Perkins?

3. Whether Ten Sleep and/or Carter instructed Perkins to cease trading in the 35 account on or about March 16, 2012?

4. Whether the trades in the 35 account after March 16, 2012 were unauthorized?

5. Whether Ten Sleep and Carter knew of the trades in the 35 account?

6. Whether Ten Sleep and/or Carter knew or should have known that the margin payments sent to Straits after March 16, 2012 were to cover at least in part margin calls in the 35 account?

7. Whether Ten Sleep and/or Carter received copies of all daily and monthly account statements for the 35 account within a short time after their respective dates?

8. Whether Ten Sleep and/or Carter read, reviewed and understood relevant portions of those statements, which showed the trading activity now claimed to be unauthorized?

9. Whether Ten Sleep and Carter were capable of understanding the account statements to ascertain whether the trading activity in the 35 account was proper?

10. Whether the losses in the 35 account could have been avoided or mitigated had Ten Sleep notified Straits of any irregularities, errors, or unauthorized trading in the account?

11. What were Ten Sleep's damages, if any, from the alleged unauthorized trading?

12. Whether the affidavit signed by Perkins on June 25, 2012 is accurate[1]?

13. Whether Straits' actions were malicious, willful, intentional and/or oppressive?

14. Whether Straits unreasonably failed to detect and prevent any alleged unauthorized trading by Perkins in the 35 account?

---

[1] Perkins signed this Affidavit without Straits' knowledge. The Affidavit purports to admit the unauthorized trading. Perkins now contests the accuracy of the affidavit for reasons he will testify to at trial.

3

15. The amount of attorneys fees and interest to which Straits is entitled for Ten Sleep's unpaid debit balances?

### III. LEGAL ISSUES

The legal issues to be determined in this matter include[2]:

1. Whether Ten Sleep is liable for the debit balance in the combined 33 and 35 accounts?

**Ten Sleep is liable for the debit balance in the 35 account either because it authorized all trades in that account or is barred from now claiming the trades were unauthorized. The principal amount of this debit balance is $168,877.02. Under the Customer Agreement, Straits is also entitled to interest, costs and attorneys fees.**

2. Whether Carter is liable to Straits for the debit balance due to the Guaranty?

**Carter's Guaranty was part of the RJO Customer Agreement assigned to Straits and is enforceable under applicable Illinois law, so that Carter is personally liable.**

3. Whether Carter is subject to in personam jurisdiction before this Court?

**Carter is subject to Illinois jurisdiction for the reasons set forth in this Court's Opinion on Carter's Motion to Dismiss [Docket No. 39]**

4. Whether Ten Sleep's RJO Customer Agreement and Carter's Guaranty were assignable and assigned to Straits by RJO?

**The Guaranty was assignable to Straits for the reasons set forth in this Court's decision on Carter's Motion to Dismiss [Docket No. 39]. The RJO Customer was part of the Assignment Agreement between Straits and RJO and the assignment was authorized by Ten Sleep and by applicable CFTC Rules.**

---

[2] The omission of any legal or factual issue, argument, or case authority in this Trial Brief is not intended by Straits to waive its right to raise any such issue, argument or authority that it may otherwise raise.

4

5. Whether Perkins acted outside the scope of his employment and agency with Straits in trading the 35 account?

**Straits would not be liable for Perkins' alleged conduct because he acted outside the scope of his employment and agency with Straits in entering into an agreement with Ten Sleep to trade the 35 account and split the profits with Ten Sleep. Ten Sleep has failed to carry its burden of proving that Perkins acted within the scope of his employment or agency with Straits. <u>Bagent v. Blessing Care Corporation,</u> 224 Ill. 2d 154, 862 N.E. 2d 985 (2007).**

6. Whether Straits converted the money in Ten Sleep's "33 Account" to cover the debit balance in Ten Sleep's 35 Account?

**Straits was authorized by the Customer Agreement and by applicable NFA and industry guidelines to cross-margin the two accounts and to apply the monies in the 33 Account to cover the debit balance in the 35 Account. Therefore, Ten Sleep cannot carry its burden of proof that Ten Sleep had the absolute and unconditional right to immediate possession of that balance and that Straits wrongfully and without authorization assumed control, dominion or ownership over that balance. <u>Van Diest Supply Co. v. Shelby County State Bank</u>, 425 F. 3d 437 (7th Cir. 2005)**

7. Whether Perkins violated Section 4(b) of the Commodity Exchange Act ("CEA") by making unauthorized trades in the 35 Account after March 16, 2012?

8. Whether Straits is liable under the CEA for Perkins' alleged conduct?

**If Perkins did not engage in unauthorized trading, Ten Sleep has no claim against him or Straits. If Ten Sleep proves that Perkins did engage in unauthorized trading, and that Perkins did so in his capacity as an agent and employee of Straits,**

**Ten Sleep would make out a prima facie case against Straits under the CEA, subject to Straits' Affirmative Defenses.**

9. Whether Perkins and Straits violated the Illinois Consumer Fraud Act ("ICFA")?

10. Whether Ten Sleep is entitled to bring an action under the ICFA?

11. Whether Straits is liable under the ICFA for Perkins' alleged actions?

**To prevail on this claim, Ten Sleep must prove (1) that Perkins and Straits engaged in a deceptive act or practice; (2) that Perkins and Straits intended that Ten Sleep rely on the deception; (3) that the alleged deception occurred during a course of conduct involving trade or commerce; (4) that Ten Sleep incurred actual damages; (5) that the alleged deception was the proximate cause of Ten Sleep's claimed damages and (6) that the conduct was directed to the market generally. Ten Sleep cannot prove these elements. Straits did not deceive Ten Sleep and in fact provided Ten Sleep with accurate account statements. Also, Ten Sleep, as a non-Illinois resident, it not is entitled to the protection of the Illinois statute. <u>Avery v. State Farm Mutual Automobile Insurance Co.</u> 216 Ill. 2d 100, 835 N.E. 2d 801 (Ill. 2005); <u>The Clearing Corporation v. Financial and Energy Exchange Limited</u>, 2010 WL 2836717 (N.D. Ill. 2010) (Zagel, J.).**

12. Whether Straits violated any fiduciary duty to Ten Sleep?

**Ten Sleep must prove that Perkins and Straits owed Ten Sleep a fiduciary duty, that Perkins and Straits breached their fiduciary duty and that the alleged breach was the proximate cause of Ten Sleep's claimed damages. *Neade v. Portes,* 193 Ill.2d 433, 444, 250 Ill.Dec. 733, 739 N.E.2d 496, 502 (2000). Straits did not breach any fiduciary duty to Ten Sleep because it timely and accurately reported all trades to**

**Ten Sleep, which was the scope of its fiduciary duty. Therefore, any loss to Ten Sleep was not caused by any action or inaction of Straits.**

13. Whether Straits was unjustly enriched?

14. Whether Ten Sleep's claim for unjust enrichment is barred by the existence of an agreement between Ten Sleep and Straits?

**Ten Sleep must prove that Straits retained a benefit to Ten Sleep's detriment, and that the retention of that benefit violates fundamental principles of justice, equity, and good conscience." People ex rel. Hartigan v. E & E Hauling, Inc., 153 Ill.2d 473, 607 N.E.2d 165, 177 (1992). Because unjust enrichment claims are quasi-contractual in nature, such claims are foreclosed where the parties' relationship is governed by an express contract. Utility Audit, Inc. v. Horace Mann Service Corp., 383 F.3d 683, 688 (7th Cir.2004). In this case, Straits was not "unjustly enriched". Ten Sleep failed to notify Straits of any unauthorized trading in a timely fashion, thereby depriving Straits of the opportunity to halt the trading and minimize Straits' losses because any loss in Ten Sleep's account that Ten Sleep does not pay for is charged to Straits by its clearing exchanges. Moreover, the Customer Agreement governs the relationship between the parties, thereby barring any unjust enrichment claim.**

15. Whether Straits' actions were the proximate cause of any loss to Ten Sleep?

**The proximate cause of any loss to Ten Sleep was Ten Sleep' own negligence, inaction and complicity.**

16. Whether Straits is liable for punitive damages either due to its own actions or based on the actions of Perkins?

**Punitive damages may be awarded against Straits directly only if Straits acted willfully or with such gross negligence to indicate a wanton disregard of the rights of Ten Sleep. Nicholson v. Marine Corps West Federal Credit Union, 953 F. Supp. 1012 (N.D. Ill. 1997). Punitive damages may be assessed against Straits for the alleged acts of Perkins only if Straits authorized the doing and the manner of the act, Perkins was unfit and Straits was reckless in employing him, Perkins was employed in a managerial capacity and was acting in the scope of employment, or Straits ratified or approved Perkins' alleged act. Mattyasovszky v. West Towns Bus Co., 61 Ill.2d 31, 330 N.E.2d 509 (Ill. 1975). Straits itself did not act willfully in disregard of Ten Sleep's right and none of the West Towns Bus Co. grounds apply.**

17. Whether Ten Sleep had a duty and contractual obligation under the Customer Agreement to review account statements and inform Straits immediately upon receipt of account statements of any unauthorized trade, error or discrepancy in the account and whether Ten Sleep's breach of that duty bars its claims?

**The notification provision in the Customer Agreement imposes a duty on Ten Sleep to review the account statements and report any unauthorized trades. Ten Sleep's failure to do so bars its claims. Anspacher & Associates, Inc. v. Henderson, 854 F. 2d 941 (7th Cir. 1988); Shapiro v. Bache & Co., 116 Ariz. 325, 569 P. 2d 267, 270-71 (1977); in re Dawson, 289 B.R. 654 (Bankr.N.D. Ill. 2003).**

18. Whether Ten Sleep ratified all trades in the 35 account?

**By its actions, agreement with Perkins, silence, extended and unreasonable failure to report any unauthorized trades, and continued meeting of margin calls, in all the circumstances of this case, Ten Sleep ratified the trades executed in its 35 account so**

8

that it is barred from recovery against Straits. <u>Sherwood v. Madda Trading Co.</u>, [1977-80] Comm. Fut. L. Rep. (CCH) ¶20,728 at 23,020 (CFTC); <u>Anspacher.</u>

19. Whether Ten Sleep is estopped to claim that any of the trades in the 35 account were unauthorized?

**Ten Sleep accepted confirmation and statements disclosing the essentials of transactions it now claims are unauthorized but failed to timely complain about them to Straits in violation of its duty under the Customer Agreement. Straits relied upon Ten Sleep's unreasonable silence by allowing trading to continue while the losses grew. Therefore, Ten Sleep is now estopped to assert that the trades were unauthorized. <u>Geldermann, Inc. v. Fenimore</u>, 663 F. Supp. 590 (N.D. Ill. 1987); <u>Vaughn v. Speaker</u>, 126 Ill. 2d 150, 533 N.E. 2d 885 (1988).**

20. Whether Ten Sleep has waived any claim that any of the trades in the 35 account were unauthorized by its failure to timely notify Straits of such claim?

21. Whether Ten Sleep failed to mitigate all of some of its alleged damages, or failed to avoid consequences of further losses?

**The doctrine of mitigation of damages or of avoidable consequences imposes a duty on an injured party to exercise reasonable diligence and ordinary care in attempting to minimize his or her damages or avoid aggravating his or her injury. Ten Sleep had a duty to take reasonable action to avoid enhancing its alleged damages. Ten Sleep cannot recover damages flowing from consequences it reasonably could have avoided. <u>Washington Courte Condominium Association-Four v. Washington-Golf Corp.</u>, 267 Ill.App.3d 790, 643 N.E.2d 199 (1st Dist.1994). In this case, Ten Sleep had a duty to monitor its account activity specifically to avoid the instance of**

9

**unauthorized trading. Ten Sleep was in a far better position than Straits to detect any unauthorized trading in its account. Had it done so, and notified Straits, its damages would be nonexistent or far less than those it now claims.**

22. Whether Ten Sleep is barred from recovering by the doctrine of in pari delicto?

**Ten Sleep is guilty of misconduct, fraud and bad faith by failing to adhere to the terms of its Customer Agreement, cooperating with Perkins in hiding their profit sharing agreement from Straits, and representing to Straits that it would monitor the trading in the account and failing to do so, so that it is barred by this defense.**

23. Whether Ten Sleep is bound by the provisions of the Customer Agreement whether or not Ten Sleep read or understood the document?

**A party to a contract has a duty to learn, or know, the contents of a written contract before he signs it, and a duty to determine the obligations which he undertakes by signing the agreement. The failure to read a document before signing it is no excuse for the party who signs it and such person is nevertheless bound by the terms of the Agreement. <u>Urban Sites of Chicago, LLC v. Crown Castle USA</u>, 979 N.E. 2d 480, 493 (1st Dist. 2012). Carter was capable of understanding the account documentation provisions relied upon by Straits, so that he cannot now claim that they do not bind him. <u>Carr v. CIGNA Securities, Inc.</u>, 95 F. 3d 544 (7th Cir. 1996).**

                                            s/Howard J. Stein
                                             One of the Attorneys for Straits
                                             Financial, LLC

Howard J. Stein
70 W. Madison St./Suite 2100
Chicago, IL 60602
312.726.4514
N.D. Ill. Attorney No. 2116208

**CERTIFICATE OF SERVICE**

Howard J. Stein, one of the attorneys for Straits Financial LLC, hereby certifies that he served a copy of the foregoing Trial Brief upon all counsel or record by the Court's CM/ECF system this 28th day of August 2014.

s/_____
Howard J. Stein