UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STRAITS FINANCIAL LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>TEN SLEEP CATTLE CO., and RICHARD CARTER,<br><br>    Defendants.<br><br>TEN SLEEP CATTLE CO.,<br><br>    Counter-Plaintiff and Third-Party Plaintiff,<br><br>vs.<br><br>STRAITS FINANCIAL LLC,<br><br>    Counter-Defendant<br><br>and<br><br>JASON PERKINS,<br><br>    Third-Party Defendant. | Case No. 1:12-cv-06110<br><br>Honorable Manish Shah |

### STRAITS FINANCIAL LLC'S OPPOSITION TO MOTION FOR ENTRY OF JUDGMENT BY TEN SLEEP CATTLE CO. AND RICHARD CARTER

Straits Financial LLC ("Straits"), by its attorney, submits the following Opposition to the Motion for Entry of Judgment ("Motion") [Docket #181] filed herein by Ten Sleep Cattle Co. ("Ten Sleep") and Richard Carter ("Carter").

1

## THE PARTIES NOW AGREE THAT ONE ELEMENT OF TEN SLEEP'S DAMAGES IS THE AMOUNT IN THE "33" ACCOUNT AS OF JUNE 20, 2012

Straits substantially agrees with the recitation of the procedural history of this case prior to this Court's initial status conference in this matter on October 11, 2018 set out in the Memorandum ["Memorandum"] filed by Ten Sleep and Carter in support of their Motion. [Docket #181-1 at pp. 2-4]

In their Memorandum, Ten Sleep and Carter explain that they sought $2,206,754.80 in actual damages [Docket #181-1 pp. 5-7].[1] This actual damages claim was based on two items. First, $1,992.045.79, the liquidation value of Ten Sleep's "35" account at Straits on June 20, 2012. Judge Zagel found that Jason Perkins ("Perkins"), a Straits employee, had traded that account without authorization from March 16, 2012, when Carter had told Perkins to stop trading, or words to that effect, until June 20, 2012, when all trading in that account stopped. [Docket #83; Docket #89 at pp. 707-708]. Second, Ten Sleep sought the remaining net liquidating value of the "35" account on March 16, 2012, in the amount of $214,709.01.

However, after Ten Sleep filed its Memorandum, during discussions between counsel for Straits and Ten Sleep, Straits noted its position that the losses in the "35" account were not the proper measure of damages.[2] Rather, Straits submitted that the proper measure of damages was the amount in Ten Sleep's "33" account ($1,823,168.77) when Straits offset that amount against losses in the "35" account on June 20, 2012. [Docket #83 at paragraph 21].

---

[1] Ten Sleep and Carter also seek an award of attorneys fees of $155,772.50 for fees incurred in the appeal in this matter. [Docket #183]. Although Straits believes that it has grounds to challenge the reasonableness of these fees, in order to avoid further legal costs and time Straits has determined not to oppose Ten Sleep's request for fees. For the reasons stated in this Memorandum at fn. 3, Straits believes that Carter is not personally entitled to any fees.

[2] Counsel for the parties have generally cooperated during the course of this case in an effort to reach agreement wherever possible and to reduce fees.

2

Following discussions between counsel on this issue, Ten Sleep has now filed a new stipulation of damages using the liquidation value of the "33" account as of June 20, 2012 as one of its items of damages. [Docket #186 at p. 2]. Straits concurs with this item of damages so that this portion of Ten Sleep's damages is no longer at issue (except for interest calculations thereon, as set forth below. This item of damages is **$1, 23,168.77.**

## TEN SLEEP[3] IS ENTITLED ONLY TO ONE HALF OF THE AMOUNT IN THE "35" ACCOUNT AS OF MARCH 16, 2012

The second issue raised by Straits concerning Ten Sleep's original damage calculations relates to the amount in the "35" account as of March 16, 2012. Judge Zagel found that Carter on that date instructed Perkins to cease trading in the "35" account, or similar words, because on that day Perkins had told Carter that Perkins' trading in that account had resulted in a $300,000 profit. [Docket #83 at paragraph 16] Judge Zagel found (and Straits did not appeal) that Perkins and Carter had entered into an agreement, among other things, to split any profits in the "35" account equally. Per this agreement, the $300,000 profit was wired to Ten Sleep's bank and later distributed $150,000 each to Perkins and Carter. [Docket #83 at paragraphs 11, 16]. After that withdrawal, the "35" account still had a net asset value of $214,709.01. [Docket #89 at p. 14]. This amount represented the net asset value of the futures contracts still held in that account as of the close of business that day. The parties agree on this number.

In both its original and amended damages calculation, Ten Sleep claims it is entitled to this entire amount. [Docket 181-1 at pp 5-6; Docket #186 at p. 2]. In subsequent discussions between counsel, Straits noted that per the agreement between Perkins and Carter, had no further trading occurred in the "35" account and had the account been liquidated that day, that amount

---

[3] It appears that Carter individually is also asking for an award in his favor. To the extent that Carter is personally seeking an award of any amount, such request should be denied. Carter has never been a plaintiff in this matter, and was only named as a third party defendant. As a result, he is not personally entitled to any damages, which is the only issue in this proceeding at this time.

3

would also have been split evenly between Carter and Perkins--just like the $300,000 withdrawn from the account on the same day. .As a result, Straits contends that Ten Sleep is entitled to only one half of this $214,709.01 ($107,354.51), not the full amount.

Therefore, this is the only remaining damages issue to be decided by this Court.

There is simply no legal or contractual basis to award Ten Sleep the full amount in the "35" account as of March 16, 2012. This situation is no different from the transaction whereby the additional $300,000 in profits was equally split between Perkins and Ten Sleep. Ten Sleep and Carter have always acknowledged that the Carter-Perkins agreement provided for profits in the "35" account to be split equally between Ten Sleep and Perkins. At no time in this proceeding has Ten Sleep sought recovery of the $150,000 actually paid to Perkins as his share of the $300,000 profit—because Ten Sleep recognized it has no basis for such a claim. Similarly, there is similarly no legal, contractual or conceptual basis for Ten Sleep to claim 100% of the amount remaining in the account after the $300,000 was withdrawn.

Ten Sleep's Memorandum sets forth no case law for its contention that the entire $214,709.01 "belongs to Ten Sleep, not Straits" [Docket #181-1 at p. 6] and Straits has found no case law directly on this unique issue. Ten Sleep does argue that leaving this amount in the account allowed Perkins to continue his unauthorized trading. [Id.] While that is true, the Seventh Circuit's decision has now fully allocated the entire amount of the post-March 16, 2012 loss to Straits and Ten Sleep and Carter have been absolved of all liability for those losses. Therefore, for the reasons set out in the discussion above, Ten Sleep's argument is irrelevant to the question of how much of the March 16, 2012 account value belongs to Ten Sleep.[4]

Ten Sleep also suggests that it would be equitable to award Ten Sleep the entire value of the account because Straits would "benefit" from the lower damages calculation. That is faulty

---

[4] Straits does not argue that *none* of this amount should be paid to Ten Sleep.

4

logic. In fact, Straits does not benefit from reducing the March 16, 2012 account value in half. Straits has already paid this amount to the Chicago Mercantile Exchange, its clearing firm, because as a clearing member of the CME Straits must make good on all debits in its customer accounts. Straits would be paying twice if it also had to pay this amount to Ten Sleep.[5] Moreover, such an award to Ten Sleep would ignore the Perkins-Carter agreement that is the basis for Ten Sleep's claim on this issue.

Ten Sleep has been compensated to the extent permitted by law by receiving the full amount of its loss, interest at the legal rate, costs and even its attorneys fees so there is no basis for any type of further "equitable relief" to Ten Sleep.

Therefore, Straits submits that on this issue the amount of Ten Sleep's damages is **$107,354.51**.

## TOTAL DAMAGES AWARD

Based on the foregoing, Straits submits that the total amount of actual damages that Ten Sleep should be awarded is $1,823,168.77 plus $107,354.51 equals **$1,930,523.28**, not the $2,037.877.28 sought by Ten Sleep.

## INTEREST CALCULATION

The amount of interest to be awarded will of course depend in part upon the amount of actual damages this Court awards. The parties agree that prejudgment interest is to be awarded at the rate of 3.25% annually (simple interest), per Judge Zagel's ruling on this issue. [Docket #113 at paragraph 4]. The parties further agree that post-judgment interest carried at 0.65% interest rate. Straits also agrees with the methodology Ten Sleep uses to calculate interest.

---

[5] Ten Sleep argues that because Judge Zagel rejected Straits' request to reduce Ten Sleep's damages by the combined debit in the "33" and "35" accounts this Court should award Ten Sleep the full amount of the March 16, 2012 "35" account value. [Docket #181-1 at pp. 5-6]. This is a non-sequitur. By ruling that Straits had no right to offset the two accounts, the Seventh Circuit, as noted above, essentially has held Straits liable for the full loss in the "35" account. Therefore, that ruling by Judge Zagel has been superseded and is not relevant to this issue.

5

[Docket #186 at pp. 2-3]. Straits suggests that following this Court's ruling on the damages issue, the parties be directed to confer and agree on the appropriate award of interest within a short period of time.

                                                      s/ Howard J. Stein
                                                      Attorney for Straits Financial, LLC

Howard J. Stein
Suite 2040/30 N. LaSalle St.
Chicago, IL 60602
312.726.4514
N.D. Ill. Attorney No. 2116208

## CERTIFICATE OF SERVICE

Howard J. Stein, one of the attorneys for Straits Financial LLC, hereby certifies that he served a copy of the foregoing Opposition to Motion for Judgment upon all counsel or record by the Court's CM/ECF system this 2nd day of November 2018.

                                                      s/Howard J. Stein